UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

      Settlement Facility Dow Corning Trust,

                                            Case No.  08-12019

      Mary Bennett,                         Honorable Denise Page Hood

           Appellant/Claimant.

_____/

**MEMORANDUM OPINION AND ORDER**

**I.     BACKGROUND**

On May 9, 2008, the Court entered a Stipulation and Order to Show Legal Support and Cause Why Request to File a Late Claim in the Dow Corning Settlement Facility Should not be Dismissed.  Claimant Mary Bennett submitted a response to the Show Cause Order.

Claimant seeks to submit a late claim before the Settlement Facility–Dow Corning Trust ("SF-DCT") pursuant to the Amended Joint Plan of Reorganization ("Plan") in the Dow Corning Corporation ("Dow Corning") bankruptcy action.  The deadline for filing a Proof of Claim in the bankruptcy action was January 15, 1997 (or February 14, 1997 for foreign claimants).  The deadline for filing a Notice of Intent was August 30, 2004.

On December 12, 2007, the Court entered an Agreed Order Allowing Certain Late Claimants Limited Rights to Participate in the Plan's Settlement Facility ("Late Claim Agreed Order").  The Late Claim Agreed Order indicates that the Claimants Advisory Committee ("CAC") and Dow Corning agreed that late claim requests dated after June 1, 2007 or received by the Court after June 5, 2007 are presumptively without merit.  (Late Claim Agreed Order, ¶ 15)  The CAC and Dow Corning agreed that any claimant filing such a late claim request would be required to show excusable neglect as to why the late claim request was submitted after June 1, 2007 or received by

the Court after June 5, 2007.  (Late Claim Agreed Order, ¶ 15)

Claimant has submitted documents supporting the reasons why the late claim should not be dismissed.  The Court addresses the reasons below.

## II.    ANALYSIS

Section 8.7 Amended Plan of Reorganization states that this Court retains jurisdiction to resolve controversies and disputes regarding the interpretation and implementation of the Plan and the Plan Documents, including the SFA, and, to enter orders regarding the Plan and Plan Documents. (Plan, §§ 8.7.3, 8.7.4, 8.7.5)  The Plan provides for the establishment of the SF-DCT, which is governed by the SFA.  (Plan, § 1.131) The SF-DCT was established to resolve Settling Personal Injury Claims in accordance with the Plan.  (Plan, § 2.01) The SFA and Annex A to the SFA establish the exclusive criteria by which such claims are evaluated, liquidated, allowed and paid. (SFA, § 5.01)   Resolution of the claims are governed by the SFA and corresponding claims resolution procedures in Annex A.  (SFA, § 4.01)

Generally, the provisions of a confirmed plan bind the debtor and any creditor.  11 U.S.C. § 1141(a); *In re Adkins,* 425 F.3d 296, 302 (6th Cir. 2005).  Section 1127(b) is the sole means for modification of a confirmed plan which provides that the proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of the plan.  11 U.S.C. § 1127(b).

"In interpreting a confirmed plan courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." *In re Dow Corning Corporation,* 456 F.3d 668, 676 (6th Cir. 2006); 11 U.S.C. § 1141(a).  "An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation." *City*

*of Covington v. Covington Landing, Ltd. P'ship,* 71 F.3d 1221, 1227 (6th Cir. 1995). A court

construing an order consistent with the parties' agreement does not exceed its power. *Id.* at 1228.

The Supreme Court in addressing a late claim filed beyond the deadline set forth in Bankr.

R. 3003 used the "excusable neglect" standard under Fed. R. Civ. P. Rule 60(b)(1) to determine

whether the Bankruptcy Court had the authority to enlarge time limitations under Bankr. R. 9006(b),

which is patterned after Fed. R. Civ. P. 6(b). The Supreme Court approved the following factors that

a court may consider in finding excusable neglect:  1) the danger of prejudice to the debtor; 2) the

length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay,

including whether it was within the reasonable control of the movant; and, 4) whether the movant

acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395

(1993). The Supreme Court disapproved the allowance of a late claim based on the omissions of

an attorney. *Id.* at 396. The Supreme Court noted that "clients must be held accountable for the acts

and omissions of their attorneys." *Id.* at 396. A client, having chosen a particular attorney to

represent him in a proceeding, cannot "avoid the consequences of the acts or omissions of this freely

selected agent," and that "[a]ny other notion would be wholly inconsistent with our system of

representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and

is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.* at

397. In assessing a claim of excusable neglect, "the proper focus is upon whether the neglect of [the

parties] *and their counsel* was excusable." *Id.* (emphasis in original). An attorney or *pro se* litigants

failure to timely meet a deadline because of "[i]nadvertence, ignorance of the rules, or mistakes

construing the rules do not usually constitute 'excusable neglect.'" *Id.* at 392; *Rose v. Dole,* 945 F.2d

1331, 1335 (6th Cir. 1991). Equitable tolling, although applied sparingly, has been allowed where

3

a claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. *Irwin v. Dep't of Veterans Affairs,* 489 U.S. 89, 96 (1990). Courts have been less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. *Id.*

Addressing the prejudice to the debtor factor, the Court finds that allowing this *one* claim to proceed against the SF-DCT would not greatly prejudice the assets under the Plan. However, the history of this bankruptcy action and the post-confirmation bankruptcy proceeding, shows that numerous claimants have sought to participate in the settlement program before the SF-DCT. Allowing this one claim would result in disparate treatment of other claimants who timely submitted their claims before the SF-DCT. If the Court were to allow late claimants to proceed, this would result in substantial cost in terms of claim payments and administrative expenses. The settlement funds to pay out claims and the administrative costs involved in processing the claims would significantly impact the funds available to the SF-DCT, to the timely claimants and the anticipated Premium Payments. The SF-DCT and Dow Corning would be prejudiced if this and other claims are allowed to proceed before the SF-DCT.

As to the delay factor, again, allowing *one* claim to go forward may not further delay the administration of the Plan since claims are currently being considered by the SF-DCT. However, allowing this claim, along with other claims would further delay the administration of the Plan. Reviewing new claimants' documents relating to their claims require significant time by the claim reviewers, in addition to the claims currently before the SF-DCT.

Reviewing the Claimant's reason for the untimely submission of the rupture claim, based on

the Sixth Circuit's interpretation of excusable neglect noted above, Claimant's reason that she recently discovered her implants ruptured and caused injury is insufficient to establish excusable neglect.  Claimant states that she received Dow Corning silicone breast implants on July 2, 1980.  On February 24, 2008, Claimant discovered a lump in her left breast.  On February 29, 2008, a mammogram and ultrasound confirmed her implant was ruptured.  Claimant underwent removal of ruptured silicone gel implants on June 23, 2008.  Claimant alleges that she researched the Dow Corning Class Action Lawsuit on the internet and she thought she was already a member of the class since one of her doctors gave her a telephone number to call several years ago.  When she called the SF-DCT, she was informed that she was not a member of the class.  She was then advised to write a letter to the Court requesting to be included in the class.

Claimant does not indicate what telephone number her doctor gave her to call several years previously.  Claimant also does not indicate if she spoke to someone about her claim, the identity of the entity she called or the individual she spoke with.  Other than her correspondence to this Court dated March 17, 2008, she does not indicate whether she submitted a written claim or any documents to any entity requesting to be included in the Dow Corning bankruptcy action.

Dow Corning and the CAC indicate in their stipulation that the SF-DCT records show Claimant did not submit a request to participate in the Dow Corning bankruptcy case prior to June 2007, did not timely file  Proof of Claim or Notice of Intent in the Dow Corning bankruptcy action.  Although Claimant alleges that she only recently discovered her implants were ruptured in February 2008, Claimant does not claim she did not have knowledge of the Dow Corning bankruptcy action or any related Dow Corning litigation before her implants were ruptured.  It is noted that the Plan contemplated "unmanifested claims" to be included in the bankruptcy action.  (Plan, § 1.18)   An

5

"Unmanifested Claim" is defined as a "Personal Injury Claim of a Claimant who, as of the Effective Date, has not suffered any injury alleged to have been caused, in whole or in party, by a product of the Debtor." (Plan, § 1.176)   Even if no injury had been suffered by a claimant, the Plan provided that a claimant who was implanted by a Dow Corning product, must have submitted a claim by the appropriate deadlines set forth during the bankruptcy proceeding and/or under the Plan in order to participate in the settlement program before the SF-DCT.

As previously noted, the deadlines set forth in the Plan cannot be modified by the Court and the Plan is binding upon the Debtor, creditors and claimants.  Unless the action of the moving party has been delayed by an outside force, there will generally be no cause to apply equitable tolling principles. *In the Matter of Hambright,* 216 B.R. 781, 783 (W.D. Mich. 1997).  Sufficient notice was published and individually sent to claimants regarding the various deadlines.  Claimant was aware since 1980 that she was implanted with Dow Corning silicone breast implants.  Although the term "Effective Date" was not set when the Plan was confirmed, it was clear from the Plan documents that such a date would later be established after various events had taken place.  After the Effective Date of June 1, 2004 was set, the SF-DCT, the CAC, Dow Corning and the Court made great efforts to notify the claimants and the public of the Effective Date.

There has been no showing of bad faith on behalf of the Claimant.

While it is most unfortunate and regrettable that the claim cannot be reviewed, Claimant has not shown excusable neglect to allow her late claim to proceed before the SF-DCT.

**III.     CONCLUSION**

Accordingly, for the reasons set forth above,

IT IS ORDERED that Claimant Mary Bennett's Appeal/Claim **(Doc. No. 1, 5/8/2008)** is

DENIED.

IT IS FURTHER ORDERED that this matter is DISMISSED with prejudice.

         */s/ Denise Page Hood*
         DENISE PAGE HOOD
         United States District Judge

DATED:  November 24, 2009

---

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on this date, November 25, 2009, by electronic means and/or first class U.S. mail.

         S/Sakne Srour
         Deputy Clerk